[S. F. Nos. 3555, 3565. Department One.—January 16, 1904.]

In the Matter of the Estate of HENRY LEVY, Deceased.

No. 3555. HATTIE ROSENBLUM et al., Children and Heirs, and Legatees and Devisees of Decedent, Appellants, v. PAULINE LEVY, Widow, et al., Respondents.

No. 3565. MYER JACOBS, and HERMAN MORRIS, Executors, etc., Appellants, v. PAULINE LEVY, Widow, et al., Respondents.

ESTATES OF DECEASED PERSONS—ORDER SETTING APART HOMESTEAD—APPEAL—PARTIES AGGRIEVED.—Both the executors under the will of a deceased testator and the devisees and legatees named in the will are parties aggrieved by an order setting apart a homestead for the widow for and during the administration of the estate and until its final distribution, and may appeal therefrom to this court.

ID.—EFFECT OF HOMESTEAD ORDER—DEVISEES ESPECIALLY AGGRIEVED.—The effect of the homestead order is to remove the premises set apart from the disposition of the will and to vest title thereto, subject to the order, in the heirs of the deceased as distinguished from the devisees; and where the devisees will not as heirs receive as large shares of the property as they would have received as devisees, they are especially aggrieved by the order.

ID.—PROPERTY SUBJECT TO HOMESTEAD—FAMILY RESIDENCE—BUILDING COMPOSED OF FLATS.—An entire building composed of three flats, having separate entrance-doors in front, and connected together by a stairway in the rear, the top one of which was occupied as a family residence by the deceased testator and his wife up to the time of his death, could have been legally selected as a homestead, together with the lot on which the building stands; and it may be properly set apart to the widow as a homestead by the probate court for a limited period, having a just regard to the rights of others interested in the estate.

ID.—USE OF BUILDING FOR OTHER PURPOSES.—Where a portion of a building is actually used *bona fide* as a family residence, and not primarily as merely incidental to a business, it may be selected as a homestead, with the land on which it is situated, no matter how large a part thereof may be used for other purposes than for a family residence.

ID.—CONSTRUCTION OF HOMESTEAD LAW—REMEDIAL STATUTE.—The homestead statute is a remedial measure and should be reasonably construed.

ID.—PROBATE HOMESTEAD—VALUE NOT LIMITED.—There is no specified
limitation of value in the case of a probate homestead if the es-
tate is not insolvent; and the court may set aside such property,
regardless of its value, in view of the value and condition of the
estate, as may seem just and proper. The fact that the premises set
apart were valued at seventeen thousand five hundred dollars, and
constituted in value one half of the estate, does not impair the
homestead right in the absence of a statutory limitation as to value.

ID.—SUBORDINATE RIGHTS.—The rights of creditors, and of heirs, dev-
isees, and legatees, though proper to be considered, are subordinate
to the right of the family to a home; and, if it is necessary to
take the entire estate for a homestead, such subordinate rights
must yield.

APPEALS from an order of the Superior Court of the
City and County of San Francisco setting apart a homestead
to the widow of a deceased testator. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

T. E. Pawlicki, and Otto Irving Wise, for Hattie Rosenblum
et al., Appellants in No. 3555, and Respondents in No. 3565.

Arthur J. Dannenbaum, for Executors, Appellants in No.
3565, and Respondents in No. 3555.

W. T. Kearney, for Pauline Levy, Widow, Respondent in
both appeals.

Hugo D. Newhouse, for Edward Calame, Assignee of Louis
B. Levy, Respondent in both appeals.

ANGELLOTTI, J.—These are appeals from an order set-
ting apart from the property of the estate of deceased a home-
stead for the use of the surviving wife for and during the
period of administration of said estate and until its final dis-
tribution. One appeal is taken by the executors of the will
of deceased, and the other by certain devisees and legatees
under his will. It cannot be held that the executors are not
"parties aggrieved" by such an order, within the meaning of
those words as used in the law relative to the right of appeal.
(*In re Heydenfeldt*, 117 Cal. 551.) The devisees appealing
are specially aggrieved by the order by reason of the fact

that under the settled law in this state the effect of the homestead order is to remove the premises set apart from the disposition of the will, and to vest title thereto, subject to the order, in the *heirs* of the deceased, as distinguished from the devisees. (Code Civ. Proc., sec. 1468; *Estate of Walkerly,* 108 Cal. 627, 655;[1] *Estate of Matheny,* 121 Cal. 267.) While all such devisees are heirs of the deceased, they will not, as heirs, receive as large shares of the property as they would have received as devisees.

It is contended by appellants that the property set apart should not have been set apart for two reasons, which are, substantially: 1. That the property was of such a character that it was not capable of being selected as a homestead; and 2. That the homestead set apart is excessive in value, considering the value and condition of the estate.

The property set apart consisted of a lot of land in the city and county of San Francisco, with a frontage of twenty-five feet on Ellis Street, and a depth of one hundred and thirty-seven and one half feet, with the frame building thereon. This building was three stories in height, and was subdivided into three flats of one floor each, each flat having a separate street-entrance door on Ellis Street, and being separate and distinct from the remaining flats, except that all of them were connected by a stairway which ran from the ground in the rear of the building, and connected with the kitchen-doors of all of said flats. The top flat, which the testimony showed was more valuable than either of the other flats for rental purposes, was occupied by respondent and deceased as their home prior to and up to the time of the death of deceased, and has been so occupied by respondent ever since the death of her husband.

The lot was appraised at the sum of $7,000, and the building thereon at $10,500. The only other real property of the estate, except a cemetery lot, was a lot on McAllister Street in said city, fifty-five by one hundred and thirty-seven and one half feet, appraised at $15,000, with improvements thereon consisting of a three-story frame building, containing a store and two upper floors, appraised at $3,500, and another two-story frame building, the character of which does not ap-

[1] 49 Am. St. Rep. 97, and note.

pear, appraised at $1,200, all of the same being encumbered by a mortgage for $10,000. The whole estate was appraised at $41,419.25, and was found to be solvent. So far as appears, there was no creditor other than the holder of the mortgage above referred to, and no property suitable for homestead purposes other than the property set apart.

1. Admittedly, the court in probate proceedings has the power to set apart premises as a homestead, if they be suitable and proper for residence purposes, and could have been legally selected as a homestead during the continuance of the marriage if the parties then actually resided thereon. There is no question as to the suitability of the building here involved for residence purposes, and, leaving out of consideration the question of value, we are satisfied that under the provisions of our statute and the numerous decisions of this court in regard thereto the premises set apart could have been legally selected as a homestead during the continuance of the marriage.

Section 1237 of the Civil Code provides that "The homestead consists of the dwelling-house in which the claimant resides, and the land on which the same is situated, selected as in this title provided."

Appellant's claim appears to be, that there were in fact three dwelling-houses upon the land; that a court may set apart only one dwelling-house; and that as the land is an ingredient part of the homestead, and a separation of the land and one dwelling-house from the other two dwelling-houses is impossible, owing to the manner of construction, no homestead at all can be set apart.

When the statute speaks of the "dwelling-house" it means the "building" which is occupied as a dwelling-house by the family, and not such portion of the building as may be actually used by the family for residence purposes. It is well settled, as was said by this court in *Heathman* v. *Holmes,* 94 Cal. 291, that "using a building partly, or even chiefly, for business purposes, or renting part of it, is not inconsistent with the right of homestead, provided it is, and continues to be, the *bona fide* residence of the family." In that case the homestead claimant built a large addition to his family home for hotel purposes, and leased the house, reserving a few

rooms for the use of himself and family, in which they continued to live. Under these circumstances he executed his declaration of homestead. It was held that the homestead claim was valid. In *Skinner* v. *Hall,* 69 Cal. 195, the whole house, with the exception of the room in which the claimant resided, was at the time of the filing of the declaration rented to and occupied by another. The homestead was upheld. In *Estate of Ogburn,* 105 Cal. 95, the building was divided into two nearly equal parts, one being used by the claimant as a tin-shop, and the other used partly for the millinery business of the wife, and partly by the family as their home. The whole building was held to be subject to selection by the claimant as a homestead, and properly set apart as such by the probate court. (See, also, *In re Lahiff,* 86 Cal. 151; *Ackley* v. *Chamberlain,* 16 Cal. 181[1].) These cases are all authority for the proposition that if a building is the actual *bona fide* residence of a party, he may legally select it and the land on which it is situated as a homestead, even though, incidentally, a part thereof, no matter how large, may be used by him for other purposes than those of family residence. There is no decision of this court in conflict with this view. The cases cited above are clearly distinguishable from another line of cases laying down an equally well-settled doctrine, viz.: That the use of the property is an important element to be considered, and that where the building is occupied by the claimant primarily for other purposes than those of residence, the occupancy of a portion thereof by him and his family being *for the purpose of conducting a business therein,* and but incidental to the business, the property cannot be legally selected as a homestead. (*Laughlin* v. *Wright,* 63 Cal. 113; *McDowell* v. *His Creditors,* 103 Cal. 264;[2] *Beronio* v. *Ventura County Lumber Co.,* 129 Cal. 232.[3] See, however, *Gaylord* v. *Place,* 98 Cal. 472.) In no case has it been decided that where a portion of a building is dedicated to residence purposes, and is actually occupied by the claimant as the home of himself and his family, and such occupation is not merely incidental to the carrying on of some business in other parts of the building, the building and the land on which it is situated cannot be legally

---

[1] 76 Am. Dec. 516.                    [3] 79 Am. St. Rep. 118.

[2] 42 Am. St. Rep. 114.

selected as a homestead. In *Estate of Noah*, 73 Cal. 590,[1] the property which it was sought to have set apart consisted of a four-story brick building of the value of twenty-five thousand dollars, which had been erected and occupied exclusively for business purposes.

Appellants rely also on a line of cases where it is held that where two or more buildings suitable for dwelling-house purposes, belonging to the claimant, are situated upon the same parcel of land, and the claimant resides in one, he can legally select but one as a homestead. (*In re Ligget*, 117 Cal. 352;[2] *Tiernan* v. *His Creditors*, 62 Cal. 286; *Maloney* v. *Hefer*, 75 Cal. 422;[3] *Lubbock* v. *McMann*, 82 Cal. 226;[4] *In re Allen*, 78 Cal. 293.) The distinction between these cases and the case of a single building is obvious. Under the express terms of the statute the homestead "consists of the dwelling-house in which the claimant resides and the land on which the same is situated." While this definition may include not only the land on which the dwelling-house stands, and of which it has become a part, but also such other land as may be necessary to its convenient use and occupation, it does not, when fairly construed with a view to the objects of the homestead law, include such other land as has resting thereon, as a part thereof, a building or buildings devoted to other purposes than those of a family home.

In the case at bar, one floor of a three-story residence building was actually occupied as the family home, the occupation being solely for the purposes of such a home, and not merely incidental to some other purpose. The place so occupied was an integral part of the land on which the building stood. The fact that the building contained two other stories so constructed that they were more adapted for renting purposes, by being built with separate street-entrances, could not impair the right of the claimant to select as a homestead the building and all of the land on which it stood. While those floors may have constituted separate dwelling-places, there was but one building, incapable of division, and the form of construction of the building is immaterial.

The case comes fairly within the doctrine of *Heathman* v.

---

[1] 2 Am. St. Rep. 834.      [3] 17 Am. St. Rep. 180.
[2] 59 Am. St. Rep. 190.      [4] 16 Am. St. Rep. 108.

*Holmes,* 94 Cal. 291, and we have no doubt that the property could have been legally selected as a homestead during the life of the husband. As has been frequently said, the homestead statute is a remedial measure, and should be liberally construed.

Being suitable for residence purposes at the time of its selection by the court, and of such a character that it could have been legally selected during the life of the husband, it .was capable of selection by the court.

2. It is settled that there is no specified limitation of value in the case of a probate homestead, the rule being, that the court may set apart such property as, regardless of its value, in view of the value and condition of the estate, may seem just and proper. (*Estate of Walkerly,* 81 Cal. 579; *In re Smith,* 99 Cal. 449.) It has been held that where an estate is insolvent, the court must take into account the rights of creditors, and as the legislature has fixed the sum of five thousand dollars as the limit in value which the debtor may claim for his homestead against the demands of his creditors, ''a wise exercise of judicial discretion would limit the homestead to be so set apart to this amount in value in the case of an insolvent estate, *where a homestead of this value can be divided from the remainder of the estate, or where the property sought to be set apart is capable of such admeasurement.''* (*Estate of Adams,* 128 Cal. 380, 384.)

While the rights of creditors are not to be disregarded in setting apart a homestead, they ''are subordinate to the right of the family to a home'' (*Estate of Adams,* 128 Cal. 383), and if in order to set apart such a home it be *necessary* to take the entire estate of the deceased, the creditors' rights must yield. (*Keyes* v. *Cyrus,* 100 Cal. 322.[1]) Heirs, devisees, and legatees occupy, at best, no more advantageous position than creditors. (*Sulzburger* v. *Sulzburger,* 50 Cal. 385; *In re Davis,* 69 Cal. 458; *Estate of Lahiff,* 86 Cal. 151.) While they have rights which should be considered, the family is first entitled to a home, if there be property capable of being set apart as such; and where the only premises suitable for homestead purposes are indivisible, and no homestead can be given to the family unless the whole of such premises is given,

[1] 38 Am. St. Rep. 296.

the fact that such premises are valued at seventeen thousand five hundred dollars, and constitute in value nearly one half of the estate, does not impair the homestead right, in the absence of a statutory limitation as to value.

As before stated, there is here no question as to the right of any creditor, and, so far as the record goes, it shows that the only other premises were appraised at a higher sum, and fails to indicate that the same, or any portion thereof, was of such a character that it could be set apart as a homestead.

In view of the peculiar condition of this estate, the action of the court below was just and proper. Being unable to divide the only property suitable for homestead purposes, it was necessary to set aside the whole of such property, but it was set apart for the most limited period, the period of administration of the estate, and it was further provided that the family allowance theretofore granted should cease and determine. Thus the rights of all others interested in the estate were preserved so far as was practicable.

The order is affirmed.

Shaw, J., and Van Dyke, J., concurred.